JACQUELINE STEPHENS ET AL.                    CIVIL ACTION

VERSUS                                        NO. 07-2433

STATE FARM FIRE AND                           SECTION "K"(2)
CASUALTY COMPANY


**ORDER ON MOTION**;
**FINDINGS AND RECOMMENDATION**

On March 28, 2008, the court granted the motion of defendant, State Farm Fire

and Casualty Company, to dismiss this Hurricane Katrina homeowner's insurance claim

based upon the parties' settlement. Record Doc. Nos. 11929 and 12038 in <u>Katrina Canal

Breaches Consolidated Litigation</u>, C.A. No. 05-4182 "K"(2). On December 3, 2009, the

court granted the motion of plaintiffs' counsel for limited reopening of the case. C.A.

Nos. 06-5164 and 07-5112 c/w No. 05-4182. The court's order permitted plaintiffs'

counsel to deposit $9,000 in settlement funds into the registry of the court, and referred

the matter to me to conduct a status conference with counsel for the Louisiana Road

Home Program and plaintiffs "for the purpose of determining the ownership of the net

settlement proceeds." <u>Id.</u>, Record Doc. Nos. 19267 and 19463.

I conducted the status conference on January 11, 2010. Plaintiffs' counsel, Joseph

M. Bruno, together with his paralegal, Jason Crews, and Daniel A. Rees, counsel for the

Louisiana Road Home Program, appeared.

At the conference, the competing claims against the settlement proceeds could not be resolved by agreement. Counsel advised that, as of that date, no funds had yet been deposited into the registry. They stated that the dispute related to a total settlement amount of $12,000.00, not $9,000.00; that the Road Home Program claimed $7,639.22 of the settlement; that the Bruno firm claimed $3,000 for attorney's fees; and that plaintiff, Jacqueline Stephens, contested the rights of either the Road Home Program or her counsel to any of the settlement amount.

After the conference, I issued an order that scheduled further proceedings. In response to that order, Record Doc. No. 6 in C.A. No. 07-2433 "K"(2), the Law Office of Joseph M. Bruno filed a new motion for limited reopening of the case and was permitted to deposit $12,000.00 into the registry of the court. Record Doc. No. 5 in C.A. No. 07-2433 "K"(2). The presiding district judge's order referred to me for report and recommendation the issue of how the funds should be disbursed. Record Doc. No. 7 in C.A. No. 07-2433 "K"(2). The Louisiana Road Home Program then filed a Motion for Leave to Intervene and for Disbursement of Funds Held in Registry of Court Pursuant to Local Rule 67.3, asserting its claim to part of the settlement funds. Record Doc. No. 8.

Attached to the Road Home Program's motion is evidence, including the affidavit of Daniel A. Rees, Executive Counsel of the State of Louisiana, Division of Administration, Office of Community Development – Disaster Recovery Unit. Record Doc. No. 8-2 in C.A. No. 07-2433 "K"(2). Mr. Rees's affidavit certifies that

Attachment A to his affidavit is "the Road Home Limited Subrogation/Assignment Agreement" executed by plaintiffs, Earnest and Jacqueline D. Stephens, on July 25, 2007, in connection with their receipt of a Road Home Program grant. As in all such Road Home Program agreements, the Stephenses' agreement provided in pertinent part:

> In consideration of my/our receipt of funds under The Road Home program for Hurricane Katrina/Hurricane Rita victims (the "Program") being administered by the Office of Community Development, Division of Administration, State of Louisiana, . . I/we hereby assign to the State of Louisiana, Division of Administration, Office of Community Development (the "State"), to the extent of the grant proceeds awarded or to be awarded to me under the Program, all of my/our claims and future rights to reimbursement and all payments hereafter received or to be received by me/us (a) under any policy of casualty or property damage insurance or flood insurance on the residence, excluding contents ("Residence") described in my/our application for Homeowner's Assistance under the Program ("Policies"); . . . .

> If I/we hereafter receive any insurance payments for physical damage to the Residence (not including contents) caused by Hurricane Katrina or Hurricane Rita, I/we agree to promptly pay such amount to the State if that amount would have reduced the amount of my Program grant had I/we received such insurance payments prior to my receipt of grant proceeds.

> I/We agree that rights to insurance proceeds assigned to the State herein shall be paid from any insurance payments I/we may receive, whether through unconditional tender by the insurance carrier, through settlement, or through judgment adverse to the insurance company, . . .

> I/We hereby agree that the State's written consent shall be required to settle any claim which would result in the State's recovering less than one hundred (100%) percent of the amount of my/our grant received under the Program. Request for such consent shall be directed to the Division of Administration, Office of Community Development, Legal Counsel for Disaster Recovery Unit.

Mr. Rees's affidavit further certifies that Attachment B accurately reflects the calculation of the Road Home Program's request for reimbursement from plaintiffs. Attachment B reflects that, before the insurance settlement that is the subject of these proceedings, plaintiffs received from the Road Home Program both a $30,000.00 Road Home Elevation Grant and an additional $99,964.31 storm damage grant. The evidence attached to the motion establishes that the Road Home Program's calculations yield a reimbursement subject to its Limited Subrogation/Assignment rights in the amount of $7,639.22. Id.

The Law Office of Joseph M. Bruno, plaintiffs' counsel, filed a response to the Road Home Program's motion, stating that it has no objection to the intervention or to the "suggested disbursement of funds by Louisiana State." Record Doc. No. 11 in C.A. No. 07-2433.

Plaintiff, Jacqueline Stephens, filed a written response. Record Doc. No. 12 in C.A. No. 07-2433 "K"(2). In her written submissions, Ms. Stephens requested that the court review "enclosed documents pertaining to my case/complaint." Id. at p. 1. She advised the court that her husband, co-plaintiff Earnest Stephens, died on December 31, 2008. She stated, "My only goal is to have the situation resolved." Id. The documents submitted by Ms. Stephens included copies of correspondence between her and the Louisiana Office of Disciplinary Counsel. In those documents, she inquires about the propriety of her counsel holding settlement funds in his "escrow accounts" pending Road

Home Program review of the settlement; disagrees with "being charge [sic] with Road Home over paid;" complains that "monies are deduct [sic] from my home owners policy for Louisiana Citizens," even though she has never had a policy with Louisiana Citizens; and states that she has "yet to meet Mr. Bruno." Id. at p. 3 of 23. The materials include information on her property loss claim, payout of her mortgage and correspondence with her counsel, including settlement authorization papers executed by both plaintiffs dated December 17, 2007. Id. at pp. 17-18 of 23.

On February 24, 2010, I conducted a hearing concerning this matter. Appearing in person were: plaintiffs' counsel, Joseph M. Bruno and Scott Joanen, together with Jason Crews, a paralegal in their office; Dan Rees, counsel for the State of Louisiana Road Home Program; and plaintiff Jacqueline Stephens. Counsel presented oral argument. Ms. Stephens made a statement in which she confirmed the contents of her written submissions and detailed the difficulties she has experienced in the aftermath of Hurricane Katrina and in dealing with the Road Home Program process and this lawsuit against State Farm. She reiterated that she had not met Mr. Bruno before that day's hearing, but she acknowledged that she had received the Road Home grant, had executed the subrogation/assignment papers reflected in the attachments to the Road Home Program's motion, and had met and dealt with both Messrs. Joanen and Crews of the Bruno Law Firm concerning this case.

# LAW AND ANALYSIS

The portion of the Road Home's motion seeking leave to intervene is a non-dispositive matter which I may address by order. 28 U.S.C. § 636(b)(1)(A); Local Rule 72.1E. The portion of the Road Home Program's motion seeking disbursement of $7,639.22 to the Road Home Program, $1,360.78 to plaintiff and $3,000 in attorney's fees to plaintiff's counsel is a dispositive matter requiring findings and recommendation to the district judge. 28 U.S.C. § 636(b)(1)(B).

The State of Louisiana Road Home Program seeks to intervene in this matter to assert its claim to $7,639.22 of the total of $12,000.00 in settlement proceeds, pursuant to its Limited Subrogation/Assignment Agreement with plaintiffs.

As to intervention of right, Rule 24(a) states:

> On timely motion, the court must permit anyone to intervene who
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). "Federal courts should allow intervention where 'no one would be hurt and greater justice could be attained.'" Ross v. Marshall, 426 F.3d 745, 753 (5th Cir. 2005) (quoting Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994). Thus, a party is entitled to an intervention of right if (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the property or transaction that

forms the basis of the controversy in the case into which it seeks to intervene; (3) the disposition of that case may impair or impede the potential intervenor's ability to protect its interest; and (4) the existing parties do not adequately represent the potential intervenor's interest. In re Lease Oil Antitrust Litig., 570 F.3d 244, 247 (5th Cir. 2009); Ross, 426 F.3d at 753.

As to permissive intervention, Fed. R. Civ. P. 24(b) provides in pertinent part:

(1) In General. On timely motion, the court may permit anyone to intervene who:
        (A) is given a conditional right to intervene by a federal statute; or
        (B) has a claim or defense that shares with the main action a common question of law or fact.
. . . .
(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(1), (3) (emphasis added).

The Road Home Program's proposed intervention certainly qualifies at least as a permissive intervention. The proposed intervention clearly asserts questions of both law and fact in common with plaintiffs' underlying Hurricane Katrina property damage claim. Morever, as a party seeking to recover settlement amounts allegedly owed pursuant to a contractual assignment and/or subrogation agreement, the State of Louisiana Road Home Program intervention is an intervention as of right under Fed. R. Civ. P. 24(a)(2). See In re Lease Oil Antitrust Litig., 570 F.3d at 251-52 (State of Texas

had right to intervene based on its claim to settlement funds); <u>Mountain Top Condo.</u> <u>Ass'n v. Dave Stabbert Master Builder, Inc.</u>, 72 F.3d 361, 366-67 (3d Cir. 1995) (contractual right as basis for intervention to recover Hurricane Hugo insurance proceeds); <u>State Farm Fire & Cas. Co. v. Black & Decker, Inc.</u>, No. 02-1154, 2003 WL 22966373, at *3 (E.D. La. 2003) (Duval, J.) (law firm's contract-based intervention to recover attorney fees).

<u>Both</u> permissive interventions and interventions of right may be permitted only "upon <u>timely</u> application," Fed. R. Civ. P. 24(a) (emphasis added), because "the requirement of timeliness applies whether intervention is sought as a matter of right or as a matter of discretion." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1916 at 527-28 (3d ed. 2007). The concept of "timeliness" in connection with motions for leave to intervene is a flexible one, which is left to the sound discretion of the trial court. <u>Id.</u> at 529 (citing <u>Grubbs v. Norris</u>, 870 F.2d 343, 345 (6th Cir. 1989); <u>Holland v. Sterling Enters., Inc.</u>, 777 F.2d 1288, 1293 (7th Cir. 1985); <u>McDonald v. E.J. Lavino Co.</u>, 430 F.2d 1065, 1074 (5th Cir. 1970)); <u>accord</u> <u>In re Lease Oil Antitrust Litig.</u>, 570 F.3d at 248. "'The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.'" <u>Heaton v. Monogram</u> <u>Credit Card Bank</u>, 297 F.3d 416, 422 (5th Cir. 2002) (quoting <u>Espy</u>, 18 F.3d at 1205). "Th[is] analysis is contextual; absolute measures of timeliness should be ignored." <u>Espy</u>,

18 F.3d at 1205; accord Heaton, 297 F.3d at 422. "A court should ignore 'how far the litigation has progressed when intervention is sought[,] . . . the amount of time that may have elapsed since the institution of the action . . . [, and] the likelihood that intervention may interfere with the orderly judicial processes.'" American V Ships Ltd. v. Norica Eng'g Servs., 34 Fed. Appx. 151, 2002 WL 496377, at *3 (5th Cir. 2002) (quoting John Doe # 1 v. Glickman, 256 F.3d 371, 376 (5th Cir. 2001)).

When determining whether a motion to intervene is timely, a court must consider the following four factors:  (1) how long the potential intervenor knew or reasonably should have known of his stake in the case into which he seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervenor failed to intervene when he knew or reasonably should have known of his stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if the court does not let him intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.   In re Lease Oil Antitrust Litig., 570 F.3d at 247-48 (citing Stallworth v. Monsanto Co., 558 F.2d 257, 263-66 (5th Cir. 1977)); Effjohn Int'l Cruise Holdings, 346 F.3d at 560-61 (citing Glickman, 256 F.3d at 375-76).  "These factors are 'not a formula for determining timeliness;' instead, it should be determined based on all the circumstances."  Id. at 561 (quoting Glickman, 256 F.3d at 376).

Weighing these factors in this case militates in favor of permitting the State's intervention as a timely intervention of right.  The intervention is contract-based, and

there is no dispute concerning the parties' execution of the contract. The Road Home Program did not know of its need to intervene until plaintiffs' dispute of its claim to reimbursement became clear in the course of these proceedings. All parties will be prejudiced if the intervention is not permitted because further delays will result by requiring the parties to resolve this dispute elsewhere. The massive volume of Hurricane Katrina-related claims requiring Road Home Program review and action, and the substantial proceedings that have been required in this court concerning them, all of which are reflected throughout the voluminous record in the <u>Katrina Canal Breaches Consolidated Litigation</u>, C.A. No. 05-4182 "K"(2), are circumstances that weigh heavily in favor of permitting this intervention. <u>See</u>, <u>e.g.</u>, "Case Management Order Re: Road Home Settlement Protocol," Record Doc. No. 13598 in C.A. No. 05-4182 "K"(2) (June 23, 2008).

As to the specific distribution of settlement proceeds requested in the motion, this court has previously ruled that the Road Home Limited Subrogation/Assignment Agreement executed by plaintiffs as a condition of their receipt of a Road Home grant is valid and enforceable. <u>In re Katrina Canal Breaches Consolidated Litigation</u>, C.A. No. 05-4182 "K"(2), Order and Reasons dated March 5, 2009, Record Doc. No. 18033 (Duval, J.) (5th Cir. appeal pending). The evidence submitted with the motion to intervene establishes that the amount of $7,639.22 which the Road Home Program seeks has been accurately calculated in compliance with the agreement of the parties.

10

In addition, for the following reasons, I find that the requested attorney's fee of $3,000.00, amounting to a 25% contingency fee, is reasonable, even modest, and should be paid. Under Louisiana law, a "reasonable attorney's fee is determined by the facts of an individual case. In making awards for attorney's fees, the trial court is vested with great discretion . . . ." Richardson v. Parish of Jefferson, 727 So. 2d 705, 707 (La. App. 5th Cir. 1999) (citation omitted); accord Peyton Place, Condo. Assocs., Inc. v. Guastella, 18 So. 3d 132, 146 (La. App. 5th Cir. 2009); Ollis v. Miller, 886 So. 2d 1199, 1209 (La. App. 2d Cir. 2004). "The fundamental measure of attorney's fees is reasonableness, considering the factors set forth by Rules of Professional Conduct R. 1.5 [now Rule 1.5(a)]." Mayeur v. Campbell, 666 So. 2d 366, 370 (La. App. 1st Cir. 1995). "An award of attorney fees must be reasonable based on the degree of skill and work involved in the case, the number of court appearances, the depositions, the office work and the time spent in court." Frentress v. Howard, 728 So. 2d 1019, 1022 (La. App. 2d Cir. 1999) (citation omitted); accord Ollis, 886 So. 2d at 1209.

Thus, the factors to be taken into consideration in determining the reasonableness of attorney's fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

Richardson, 727 So. 2d at 707 (citing Rivet v. State Dep't of Transp. & Dev., 680 So. 2d 1154, 1161 (La. 1996));[1] accord Peyton Place, 18 So. 3d at 146-47.  In determining an award, the court should consider the entire record.  Richardson, 727 So. 2d at 707.

In addition to the work specific to the Stephenses' claim that is reflected in all three of the relevant records in this court, C.A. Nos. 05-4182, 06-5164 and 07-2433, I know from having presided over numerous conferences and hearings in the "Insurance" umbrella of the Katrina Canal Breaches Consolidated Litigation that Joseph M. Bruno, Scott Joanen and Jason Crews have devoted hundreds (perhaps thousands) of hours of time to addressing, on a mass, consolidated basis, myriad complex issues raised by the Road Home Program.  Among other things that I observed as one of the presiding judicial officers was the attentive and extensive work of the lawyers and paralegals of the

---

[1]These factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:

> (a) A lawyer's fee shall be reasonable.  The factors to be considered in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of a particular employment will preclude other employment by the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and length of the professional relationship with the client;
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) Whether the fee is fixed or contingent.

Id. at 708 (citations omitted).

Bruno Law Office, including specifically Joseph M. Bruno, Scott Joanen and Jason Crews, which was crucial to the development of the Road Home settlement approval protocol adopted by this court, C.A. No. 05-4182 at Record Doc. No. 13598, and which ultimately was employed in the Stephens case, along with thousands of other claims like it. I also observed firsthand, as a presiding judicial officer, the extensive work of these lawyers and their paralegals in the consolidated negotiation of mass numbers of homeowners insurance claims against State Farm, including the Stephenses' claim. Certainly, some value arising from the Herculean and largely incalculable efforts of these lawyers to issues applicable to the formerly consolidated cases in this court involving the Road Home Program must be attributed to the Stephens case. From my perspective of the "big picture" presented by the consolidated Katrina litigation, the attorney's fee in the Stephens case is eminently reasonable.

Finally, the proposed order concerning distribution of funds from the registry of this court complies with Local Rules 67.1E, 67.2E and 67.3E.

Ms. Stephens and her family have undoubtedly endured hardship, personal loss and tragedy, and the frustration and delay of dealing with an undermanned and bureaucratic government program, all stemming from Hurricane Katrina. Her sense that she has not been fully compensated for what she has suffered is both palpable and understandable. The court is sympathetic. However, none of these feelings can affect the court's application of the law, the facts or the clear legal obligations arising from a

binding settlement, made with authority, and the subrogation/assignment requirements to which Road Home Program recipients, including the Stephenses, agreed as a condition of their receipt of a grant.

## ORDER ON MOTION

Having considered the record, the applicable law and the oral representations of counsel and plaintiff Jacqueline Stephens during the hearing, and for the foregoing reasons, **IT IS ORDERED** that the Louisiana Road Home Program's motion for leave to intervene is hereby GRANTED.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that the Clerk of Court be authorized and directed to draw a check (or checks) on the funds on deposit in the registry of this court in the principal amount of $7,639.22 plus 63.7% of the interest earned, payable to Louisiana Division of Administration – DRU (Tax ID#72-6000720) at P.O. Box 94095, Baton Rouge, LA 70804-9095, and mail or deliver the check (or checks) to Louisiana Division of Administration – DRU at P.O. Box 94095, Baton Rouge, LA 70804-9095.

**IT IS FURTHER RECOMMENDED** that the Clerk be further authorized and directed to draw a check (or checks) on the funds on deposit in the registry of this court in the principal amount of $1,360.78 plus 11.3% of the interest earned, less the assessment fee for the administration of funds, payable to Jacqueline Stephens at P.O.

Box 13883, New Orleans, LA 70185-3883, and mail or deliver the check (or checks) to Jacqueline Stephens at P.O. Box 13883, New Orleans, LA 70185-3883.

**IT IS FURTHER RECOMMENDED** that the Clerk be further authorized and directed to draw a check (or checks) on the funds on deposit in the registry of this court in the principal amount of $3,000.00 plus 25% of the interest earned, payable to The Law Office of Joseph M. Bruno (Tax ID# 72-0922550) at 855 Baronne St., New Orleans, LA 70113 and mail or deliver the check (or checks) to The Law Office of Joseph M. Bruno at 855 Baronne St., New Orleans, LA 70113.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation, or to the order permitting intervention, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____8th_____ day of March, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

15